# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-12-1056-R |
| ) | |
| WARDEN FIGUEROA, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Plaintiff, a California state prisoner appearing *pro se* and *in forma pauperis,* brings this action alleging various torts under Oklahoma law.[1] United States District Judge David L. Russell has referred the matter for preliminary review, for conducting any necessary hearings, including evidentiary hearings, for the entry of appropriate orders as to non-dispositive matters, and for the preparation and submission of proposed findings and recommendations as to dispositive matters referenced in 28 U.S.C. § 636(b)(1)(B) and (C). Currently before the Court is Defendant's Motion to Dismiss, **ECF No. 26**. Plaintiff has responded, and Defendants have replied. Thus, the matter is at issue and ready for disposition. For the following reasons, it is recommended that the motion to dismiss be **GRANTED.**

---

[1] Plaintiff's original complaint was based upon 42 U.S.C. § 1983; however, when he amended his complaint he omitted all federal claims, substituting tort law claims; he alleges jurisdiction on the basis of diversity of citizenship. The undersigned notes that the conclusion of Plaintiff's response to

**I. BACKGROUND**

In his five count complaint, Plaintiff brings several claims based upon an incident that occurred while he was incarcerated in the North Fork Correctional Facility (NFCF), a private prison located in Sayre, Oklahoma, that is operated by Defendant Corrections Corporation of America (CCA). First Amended Diversity of Citizenship Complaint (First Amended Complaint), ECF No. 14:4. Plaintiff, a California state prisoner, was incarcerated at NFCF pursuant to a contract with the State of California. First Amended Complaint, ECF No. 14:6-7. Although Plaintiff is now incarcerated at a state prison in Vacaville, California, all events relevant to his claims occurred during his incarceration at NFCF. *See* First Amended Complaint, ECF No. 14:4.

The factual basis of Plaintiff's claims is an attack that occurred on October 11, 2011, during which Plaintiff was attacked in the dining hall by "no less" than fifteen Hispanic gang members; Plaintiff alleges these inmates were also California prisoners who were incarcerated at NFCF. First Amended Complaint, ECF No. 14:7. Plaintiff alleges that he was kicked, beaten, and stabbed during the attack, that NFCF employees locked him and his attackers in the dining hall, and that none of the employees responded to his pleas for assistance. Second Amended Complaint, ECF No. 14:7. Plaintiff alleges that he was evacuated by helicopter to a hospital where he remained for 30-36 hours before being returned to NFCF. *Id.*

In his five-count complaint, Plaintiff first alleges negligence on the part of Defendant CCA for failing to adequately staff, equip, and train its employees. *Id.* at 9. Second, he alleges "negligent infliction of emotional distress" resulting from the injuries caused by Defendants' acts and omissions. *Id.* at 10. In his third count, Plaintiff alleges that Defendants CCA, NFCF, and John and Jane Does knew or should have known that policies for the hiring, retention, supervision, and training of employees would likely lead to acts of violence. First Amended Complaint, ECF No. 14:10-11. Fourth, Plaintiff brings a tort claim for assault against Defendants, alleging that they "intentionally caused Plaintiff to fear an imminent battery." *Id.* at 12. He alleges that Defendants' acts were willful, obdurate, and done with gross and reckless disregard for Plaintiff's "bodily integrity." *Id.* Fifth, and finally, Plaintiff alleges a tort claim for battery. *Id.* He alleges that Defendant's wrongful acts or omissions proximately caused physical injury, pain and suffering, and severe psychological and emotional distress. *Id.* As relief, Plaintiff requests compensatory and punitive damages, prejudgment and post-judgment interest, and attorney's fees.

**II. DEFENDANT'S MOTION TO DISMISS**

Defendant Corrections Corporation of America (CCA) raises three grounds for dismissal: they contend that Plaintiff has failed to exhaust his administrative remedies, that his claims for assault and battery are barred by the statute of limitations, and that there is no tort of "negligent infliction of emotional distress." Defendant's Motion to Dismiss and Brief in Support, 3, 8-9 (Motion to Dismiss).

In support of the motion to dismiss, Defendant has attached grievance records and policies that are referred to in the original and first amended complaint; they contend that these materials may be considered in determining the motion to dismiss without converting it to a motion for summary judgment. Motion to Dismiss, 2. Defendants specifically request that the motion to dismiss *not* be converted to a motion for summary judgment. *Id.* The undersigned agrees that the grievance policies and documents reflecting Plaintiff's exhaustion of administrative remedies may be considered without converting the motion to dismiss to one for summary judgment. Moreover, in response to the motion to dismiss, Plaintiff does not object to consideration of the materials attached to the motion to dismiss, and even supplements his response with the grievance materials that he refers to in his First Amended Complaint. "Where the material is submitted as an exhibit to a pleading or incorporated or referenced in a complaint, the Court may properly consider that material in adjudicating a Rule 12(b)(6) motion; it may also consider documents relied upon by a plaintiff as an integral basis for his claims." *Tal v. Hogan,* 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006) (citing *Industrial Constructors Corp. v. United States Bureau of Reclamation,* 15 F.3d 963, 964–65 (10th Cir. 1994)).

Plaintiff concedes that California's policies regarding exhaustion of administrative remedies apply to him, and California's regulations support that allegation: "Inmates transferred to a COCF [California Out-of-State Correctional Facility] program remain under the legal custody of the CDCR [California Department

4

of Corrections and Rehabilitation] and shall be subject to the rules, rights and privileges of the CDCR in accordance with the California Code of Regulations (CCR), Division 3, Title 15 § 3379." Cal. Code Regs. tit. 15, § 3379(a)(I). Applying California's regulations to Plaintiff's allegations, as supplemented by the grievance materials he referred to in his pleadings and has now provided, show that he did not appeal the cancellation of his grievance appeal. This fact is dispositive of the exhaustion issue for the reasons discussed below.

### A. Failure to Exhaust Administrative Remedies

As its first ground for dismissal, Defendant claims that Plaintiff failed to exhaust his available administrative remedies before bringing suit. Motion to Dismiss, 3 (citing Okla. Stat. tit. 57, §§ 564, 566.5, 566.3(G)(2), and 566(A)(1)). Defendant first argues as a general matter that Oklahoma bars judicial relief where an aggrieved party who has adequate administrative remedies does not exhaust those remedies prior to bringing suit. Motion to Dismiss, 3 (citing *State ex rel. Dep't of Transp. v. Little,* 100 P.3d 707, 715 (Okla. 2004)). More specifically, Defendants argue that Oklahoma courts have applied this exhaustion requirement to lawsuits brought by inmates. Motion to Dismiss, 4 (citing *Simmons v. Corr. Corp. of Am.*, 130 P.3d 305, 307 (Okla. Civ. App. 2006)). The exhaustion requirement has also been codified in the Oklahoma Statutes:

> In any legal proceeding filed by an inmate, full and complete exhaustion of all administrative and statutory remedies on all potential claims against the state, the Department of Corrections, *private entities contracting to provide correctional services,* or an employee of the state or the Department of Corrections is a jurisdictional requirement and must be completed prior to the filing of any pleadings.

Okla. Stat. tit. 57, § 566.5 (emphasis added).[2]

To determine whether Plaintiff has exhausted his administrative remedies, the undersigned must look to the CDCR regulations; as noted, the administrative process is governed by the "rules, rights and privileges of the CDCR for California state prisoners who are housed in a California Out-of-State Correctional Facility. Cal. Code Regs, tit. 15, § 3379(a)(I). The rules regarding grievance procedures are codified in Cal. Code Regs, tit 15, § 3084.1.

In order to exhaust administrative remedies under the CDCR regulations, a prisoner must pursue three levels of review: "all appeals are subject to a third level

---

[2] In this diversity case, neither party directly addresses which state's law should govern this dispute. Accordingly, the undersigned has applied Oklahoma law in determining whether Plaintiff's failure to exhaust his administrative remedies bars his claims. *Flying J Inc. v. Comdata Network, Inc.,* 405 F.3d 821, 832 n. 4 (10th Cir.2005) (courts do not normally address choice of law issues sua sponte where parties acquiesce in application of a certain state's law); *N. Am. Specialty Ins. Co. v. Corr. Med. Servs., Inc.*, 527 F.3d 1033, 1040 (10th Cir. 2008). Moreover, an actual conflict of laws must exist before applying choice-of-law analysis; when there is no conflict, the court applies the law of the forum. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153 (10th Cir. 2010). Both Oklahoma and California require a prisoner to exhaust administrative remedies before bringing suit. *Compare Parthemore v. Col,* 221 Cal. App. 4th 1372, 1379 (2013), *review denied* (Mar. 12, 2014) ("A California state prisoner must exhaust available administrative remedies before filing a lawsuit") *with* Okla. Stat. tit. 57, § 566.5 ("In any legal proceeding filed by an inmate, full and complete exhaustion of all administrative and statutory remedies on all potential claims against ... *private entities contracting to provide correctional services* ... is a jurisdictional requirement and must be completed prior to the filing of any pleadings.").

6

of review, as described in section 3084.7, before administrative remedies are deemed exhausted." Cal. Code Regs. tit. 15, § 3084.1(b).

In the first level of review,[3] a prisoner must prepare and submit CDCR Form 602 describing the specific issue under appeal and the relief requested. § 3084.2(a). There is an additional form, 602-A, that a prisoner may attach if additional space is needed to describe the issue or relief. *Id.* A prisoner must file his first level appeal within thirty days of the event or decision being appealed. § 3084.8(b)(1).

Plaintiff alleges that the incident giving rise to his claims occurred on October 11, 2011. First Amended Complaint, p. 4 (ECF No. 14:7) ¶ 12. Plaintiff obtained an appeal form "approximately one week after the October 11, 2011 incident . . . ." *Id.* at ¶ 19. He alleges it was placed in the mail the same day. *Id.* He alleges that two weeks later one of the John Doe defendants returned it to him "unmailed", stating that he should pursue the matter once he was transferred back to California. *Id.* Plaintiff states he filed his first level appeal on November 17, 2011. Plaintiff's Opposition to Defendant's Motion to Dismiss, 2. This appeal was rejected as unclear[4] on December 5, 2011; Plaintiff corrected the deficiencies noted and re-submitted his CDCR Form 602. *Id.* at Exs. A, B, C. On January 18, 2012, the resubmitted appeal

---

[3] Under California's regulations, all three levels of review are referred to as "appeals," as opposed to the Oklahoma Department of Corrections' description of the first level of a formal review process as a "grievance." *See* Oklahoma Dep't Corr. Policy & Operations Manual, OP-090124 (I)(A), http://www.ok.gov/doc/documents/op090124.pdf (accessed Apr. 24, 2014).

[4] According to Defendant, the CDCR Form 602 was unclear because it asked for both compensation for the actions of NCFC and a transfer. The nature of an appeal determines whether it will be handled by NFCF staff or the Contract Beds Unit of the CDCR. Defendant's Motion to Dismiss, 6.

7

was rejected because Plaintiff had not signed his CDCR Form 602-A and had attached his previous appeal forms. Plaintiff's Opposition to Defendant's Motion to Dismiss, Ex. D. Plaintiff resubmitted his appeal to correct these deficiencies on January 26, 2012. *Id.* at Ex. E.

Because Plaintiff's appeal was determined to be a complaint about NFCF staff, it was forwarded to the CDCR's Appeals Coordinator in the Contract Beds Unit (CBU); this unit handles appeals regarding complaints against staff of the contract out-of-state correctional facility—in this case, NFCF. Defendant's Motion to Dismiss, Ex. A, Att. B. However, upon receipt of Plaintiff's appeal, the Appeals Coordinator of the CBU cancelled it on grounds that the first level appeal was untimely filed. Plaintiff's Opposition to Defendant's Motion to Dismiss, Ex. F. The regulations regarding cancellation provide: "Once cancelled, an appeal shall not be accepted except pursuant to subsection 3084.6(a)(3); however, the application of the rules provided in subsection 3084.6(c) to the cancelled appeal may be *separately appealed.*" Cal. Code Regs. tit. 15, § 3084.6(e) (*emphasis added*).

On a copy of the letter cancelling his appeal, Plaintiff requested the Appeals Coordinator to toll the time for filing his first level appeal because he spent seven days in the "hospital and infirmary." Plaintiff's Opposition to Defendant's Motion to Dismiss, Ex. F. In effect, Plaintiff utilized the exception referenced in § 3084.6(e). Under Cal. Code Regs, tit. 15, § 3084.6(a)(3). That provision gives the appeals coordinator discretion to accept a cancelled appeal "if a determination is made that

cancellation was made in error or new information is received which makes the appeal eligible for further review." *Id.*

The Appeals Coordinator noted on February 11, 2012, that Plaintiff's request for tolling (written on the same letter he received cancelling his appeal) was "granted," indicating that a discretionary acceptance of the appeal would be considered. Plaintiff's Opposition to Defendant's Motion to Dismiss, Ex. F. However, on February 29, 2012, the Appeals Coordinator sent another notice of cancellation, noting that Plaintiff only spent one day in the hospital following the attack. Plaintiff's Opposition to Defendant's Motion to Dismiss, Ex. G. The cancellation letter specifically advises Plaintiff of the CDCR regulations regarding cancelled appeals: "Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, *a separate appeal can be filed on the cancellation decision*. The original appeal may only be resubmitted if the appeal on the cancellation is granted." (emphasis added). *Id.* The linchpin of Defendant's claim that Plaintiff has failed to exhaust his administrative remedies is that Plaintiff failed to separately appeal the "cancellation" of the appeal as untimely. Defendant's Motion to Dismiss, 8.

In his opposition to the motion to dismiss, Plaintiff does not take issue with Defendant's claim that he failed to separately appeal the cancellation. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss, 3. After referencing the second cancellation, Plaintiff states that he "has demonstrated that the appeals process was

9

ineffective," and that "[c]onsidering the circumstances, Plaintiff could not reasonably contemplate the prospect of further review." *Id.* at 3, 5.

Effectively conceding that he did not separately appeal the cancellation, Plaintiff instead argues that the basis for the cancellation was wrong. He argues that his initial appeals were not rejected as untimely, but were decided on the merits. Plaintiff's Opposition to Defendant's Motion to Dismiss, 2, 4. Citing law regarding the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), Plaintiff argues that the exhaustion requirement is satisfied even though procedurally flawed if it is nonetheless denied on the merits. Plaintiff's Opposition to Defendant's Motion to Dismiss, 4. He argues that the Defendant should therefore be "estopped" from asserting an exhaustion defense.

Plaintiff's argument is not persuasive. The CDCR specifically states that "[e]rroneous acceptance of an appeal at a lower level does not preclude the next level of review from taking appropriate action, including rejection or cancellation of the appeal." § 3084.6(a)(5).

Plaintiff also argues that he was not afforded an interview. Plaintiff's Opposition to Defendant's Motion to Dismiss, 4. Although the CDCR regulations do provide for a face-to-face or telephone interview at either the first or second level of appeal, *See* Cal. Code Regs. tit. 15, § 3084.7(e), Plaintiff could have raised any issues regarding the administrative process or the facts underlying his appeal in a separate appeal of the cancellation decision.

Based upon the Plaintiff's allegations, the governing regulations, and the administrative materials referred to by Plaintiff in his pleadings and submitted by the parties, the undersigned finds that Plaintiff did not exhaust all of his administrative remedies. Under Oklahoma law, "full and complete" exhaustion of administrative remedies is a prerequisite to any legal action against a private entity contracting to provide correctional services. Okla. Stat. tit. 57, § 566.5. Accordingly, it is recommended that Defendant's motion to dismiss on grounds that Plaintiff has failed to exhaust his administrative remedies be granted. In light of this recommendation, it is unnecessary to address Defendant's other grounds for dismissal.

### B. The Action Should be Dismissed in its Entirety

Although Plaintiff has yet to identify the "Doe" Defendants, the same findings leading to the recommendation that Defendant CCA's motion to dismiss be granted support dismissal of the entire action under 28 U.S.C.A. § 1915(e)(2): "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted. . . ."

### C. Dismissal Without Prejudice and Without Leave to Amend

Furthermore, the undersigned recommends that the dismissal be without leave to amend. In his opposition to the motion to dismiss, Plaintiff requested "leave to file a Second Amended Complaint stating federal claims." Plaintiff's Opposition to Motion to Dismiss, 5. Under Fed. R. Civ. P. 15(a)(2), a party who has already

11

amended his complaint once may amend his "pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." However: "A district court may refuse to allow amendment if it would be futile." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). A proposed amendment is futile if it would be subject to dismissal. *Id.*

In this case, an amendment to include what are presumably claims under 42 U.S.C. § 1983 would also be subject to dismissal due to Plaintiff's failure to exhaust his administrative remedies: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The only remaining question is whether the dismissal of this action should be with or without prejudice. In a case involving a private prison housing prison inmates under a contract with the Oklahoma Department of Corrections the court held: "where an inmate initiates an action 'against *any person, party or entity,* the state, the Department of Corrections, another state agency, or political subdivision,' a trial court may dismiss it *with or without prejudice* for failure to exhaust all available administrative and statutory remedies prior to filing." *Simmons v. Corr. Corp. of Am.*, 130 P.3d 305, 307 (Okla. Civ. App. 2006) (emphasis added). Although it appears unlikely that Plaintiff can exhaust his remedies at this point, the CDCR regulations do give the Appeals Coordinator of the Contract Beds Unit discretion with regard to the

12

handling of cancelled appeals. *See* Cal. Code Regs. tit. 15, § 3084.6(a)(3). Accordingly, it seems that dismissal without prejudice is appropriate under the circumstances presented.

Although the two-year statute of limitations governing § 1983 claims arising out of conduct that occurred in Oklahoma might be problematic for Plaintiff at this point, Oklahoma's "savings statute" has been held to extend the limitations period regardless whether the dismissed suit was filed in state court or federal court sitting within the State of Oklahoma. *Grider v. USX Corp.,* 847 P.2d 779, 783 (Okla. 1993) (citing Okla. Stat. tit. 12, § 100); *Williams v. City of Guthrie,* No. 03-6212, 109 Fed. Appx. 283, 286 (10th Cir. Sept. 8, 2004) (applying Oklahoma savings statute to § 1983 claim filed in federal court).

## RECOMMENDATION

In light of the foregoing, it is recommended that Defendant's Motion to Dismiss, **ECF No. 26** be **GRANTED,** and for the reasons discussed above, that the entire action be **DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**. In addition, in light of the recommended disposition, Plaintiff's motions **ECF Nos. 29, 35, and 38 should be DENIED.** Plaintiff is hereby advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by **May 15, 2014**, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and

legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

This Report and Recommendation **disposes of all issues** referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** on April 28, 2014.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE